IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION
Case No. 5: 04 - cv - 240 - FL (1)

| | | |
|---|---|---|
| MARTHA GRAHAM, AMANDA FORD CHALONDA BUNDY and GILDA BRISBON | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| RALEIGH HOUSING AUTHORITY, STEVE BEAM, Executive Director, and YVETTE BYRD, Director, Leased Housing Department, each in their official capacity, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

FILED
APR 0 7 2004
L. CLERK
US DISTRICT COURT, EDNC
BY_____DEP. CLK

## I. INTRODUCTION

1.      Plaintiffs file this action for declaratory and injunctive relief and damages

against the Raleigh Housing Authority (hereinafter "RHA"), Steve Beam and Yvette

Byrd, pursuant to 42 U.S.C. § 1983 and the U.S. Housing Act, 42 U.S.C. § 1437(f),

alleging deprivation of Plaintiffs' respective rights secured by the First and Fourteenth

Amendments to the United States Constitution, the Law of the Land Clause, Art. I, § 19

of the North Carolina Constitution, the U.S. Housing Act, 42 U.S.C. § 1437(f) and its

implementing regulations.

2.      Specifically, plaintiffs allege that Defendants' policy and practice of

excluding plaintiffs' minor relatives from their respective family households, for

purposes of calculating Section 8 housing assistance which plaintiffs are otherwise

eligible to receive, is unreasonable, arbitrary and capricious. Plaintiffs also allege that Defendants failure to provide Plaintiffs with notice and the opportunity for an administrative hearing violated each of the Plaintiffs' due process rights.

3.      Plaintiffs seek a declaration that Defendants' policy and practice of excluding minor relatives of adult Section 8 tenants who are not their natural born children, from Section 8 households and not counting them as part of the Section 8 household and rental assistance calculation, unless a court adoption or custody order has been obtained by an adult Section 8 participant, violates the Plaintiffs' rights under 42 U.S.C. § 1437f, as well as Defendants' governing HUD regulations at 24 C.F.R. §982.551(h)(2), 24 CFR 5.403; 24 CFR 982.201(c )(1) and (2).

4.      Plaintiffs also seek a declaration that Defendants' refusal to provide Plaintiffs with notice and an informal administrative hearing regarding its decision affecting Plaintiffs' income, rental assistance calculation and family unit size, violates the Plaintiffs' procedural due process rights under the requirements of 24 C.F.R. §982.555, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Art. I, § 19 of the North Carolina Constitution.

## II. JURISDICTION

5.      Jurisdiction is conferred on this court by 28 U.S.C. §§1331 and 1337 in that this action raises a "federal question" arising under the Constitution and laws of the United States, specifically 42 U.S.C. §1437f.

6.      Jurisdiction is also conferred on the court by 28 U.S.C. §1343(a) (3) and (4) in that this is an action arising under 42 U.S.C. §1983 to redress the deprivation of

plaintiffs' rights under the Constitution or federal law by persons acting under the color of law.

7.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201, 2202 and 42 U.S.C. §1983.

8.     Supplemental jurisdiction is conferred over Plaintiffs' nonfederal claims by 28 U.S.C. § 1367.

## III. PARTIES

9.     Martha Graham is a citizen and adult resident of Raleigh, North Carolina. At all times relevant to this Complaint, she has been a participant in the RHA Section 8 Housing Choice Voucher program (hereinafter "RHA Section 8 Voucher program").

10.     Amanda Ford is a citizen and adult resident of Raleigh, North Carolina. At all times relevant to this Complaint, she has been a participant in the RHA Section 8 Voucher program.

11.     Chalonda Bundy is a citizen and adult resident of Raleigh, North Carolina. At all times relevant to this Complaint, she has been a participant in the RHA Section 8 Voucher program.

12.     Gilda Brisbon is a citizen and adult resident of Raleigh, North Carolina. At all times relevant to this Complaint, she has been a participant in RHA's Section 8 Voucher program.

13.     Defendant Raleigh Housing Authority is a body corporate and politic, pursuant to N.C.G.S. § 157 et seq., having the right to sue and be sued. Defendant RHA administers the Section 8 Voucher program in Raleigh and Wake County pursuant to 24

C.F.R. §982.51(a). RHA maintains its principal office at 900 Haynes Street, Raleigh, North Carolina 27604

14.     Defendant Steve Beam is the Executive Director of the Raleigh Housing Authority. He has full authority over the Raleigh Housing Authority, including its Section 8 Voucher program, to see that the program's policies and practices conform to the law. He is also responsible for the operation and administration of the RHA Section 8 Voucher program, and ensuring that all RHA Section 8 Voucher program employees perform their jobs legally and properly.  His office is located at 900 Haynes Street, Raleigh, North Carolina 27604. He is being sued in his official capacity.

15.     Defendant Yvette Byrd is the Director of the RHA Section 8 Voucher program. She has full authority over the RHA Section 8 program to see that the program's policies and practices conform to the law.  She is also responsible for the operation and administration of the RHA Section 8 Voucher program, and ensuring that all RHA Section 8 program employees perform their jobs legally and properly.  Her office is located at 900 Haynes Street, Raleigh, North Carolina 27604.  She is being sued in her official capacity.

## IV. VENUE

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the Plaintiffs' claims arose in this district.

## V.  STATUTORY AND REGULATORY BACKGROUND

17.     The Section 8 Voucher program enables low-income families to rent safe, sanitary and affordable housing with the assistance of subsidies from local housing authorities.  *See* 42 U.S.C. § 1437f and 24 C.F.R. Part 982.

18.     Funding for the rental subsidies and the operation of the program is paid by the U.S. Department of Housing & Urban Development (hereinafter "HUD") to local participating housing authorities. 24 C.F.R. §§ 982.101 and 982.102.

19.     HUD enters into an Annual Contributions Contract (hereinafter "ACC") with the participating public housing authority. 24 C.F.R. § 982.151. The ACC, *inter alia*, mandates that the participating housing authority follow federal guidelines in operating the Section 8 Voucher program.

20.     Federal regulations governing Section 8 define the terms "family" and "family composition" very broadly, to include a family with or without children, whether composed of a single person or group of persons. 24 C.F.R 5.403; 24 C.F.R 982.201(c ) (1) and (2).

21.     Defendants' "Administrative Plan for the Section 8 Voucher Program" (hereinafter "Section 8 Administrative Plan") defines the term "Family" to mean "two or more persons, one of which is of majority age and who is related by blood, marriage or adoption (including foster children), guardianship or operation of law who will live regularly together as a single household... ."

22.     Federal regulations governing Section 8 define the term "Household" to mean "the family and PHA approved live-in aid." 24 C.F.R. § 5.100.

23.     Federal regulations governing Section 8 define the term "dependent" to mean " a member of the family (except foster children and foster adults) other than the family head or spouse, who is under 18 years of age, or is a person with a disability, or is a full-time student." 24 C.F.R. § 5.603 (b).

24.     Defendants' Section 8 Administrative Plan defines the term "dependent" to mean "a member of the family household (excluding foster children) other than the family head or Spouse, who is under 18 years of age or is a Disabled person or Handicapped Person, or is a full-time student 18 years of age or over."

25.     The maximum monthly subsidy payment ("payment standard") for a Section 8 family depends upon the family unit size and/or number of bedrooms to be rented.  24 C.F.R. § 982.505 (c )

26.     The voucher unit size, or number of approved bedrooms to be covered by the Section 8 voucher, in turn depends upon the number of Section 8 family members officially recognized and approved by the public housing authority, and included within the "household."

27.     In administering the program, a public housing authority must comply with the consolidated ACC, the Section 8 application, HUD regulations and other requirements, and the public housing authority's own Administrative Plan. 24 C.F.R. §982.153.

28.     Defendants have a policy and practice of excluding from Section 8 households the minor relatives of adult Section 8 tenants who are not their natural born children, for purposes of calculating rental assistance and family size, absent proof of a formal custody order or legal adoption.

29.     Upon information and belief, Defendants' policy and practice as stated in paragraph 28 above, is based upon Defendants' application of Section III. D (3) ("Tenant Selection") contained in Defendants' Section 8 Administrative Plan, which provides in relevant part:

There are three (3) selection preferences for Section 8. Each preference will have equal value when placed on the waiting list......
(3) Family with legal custody of minor children/dependents – The applicant must show that they have legal custody and responsibility for raising the minor children. This can be legal guardianship or court ordered long-term responsibility.

30.     Upon information and belief, Defendants' policy and practice as stated in paragraph 28, is based on their interpretation of 24 C.F.R. §982.551(h)(2), which states:

The composition of the assisted family residing in the unit must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. The family must request PHA approval to add any other family member as an occupant of the unit. No other person [i.e., nobody but members of the assisted family] may reside in the unit (except a foster child or live-in aide as provided in paragraph (h)(4) of this section).

31.     In the absence of proof that an adoption or court custody order has been obtained by the otherwise eligible Section 8 applicant or participant, Defendants' policy and practice results in the exclusion of the minor relative from Defendants' rental assistance calculation and determination of family unit size for that Section 8 household.

32.     As a result of Defendants' policy and practice, Plaintiffs have had to pay a greater personal share of rent due each month, than other similarly situated families with resident natural born children.

33.     Defendants' policy and practice results in Defendants not allowing an otherwise eligible Section 8 family with dependent children, such as Plaintiffs, to obtain the same Section 8 voucher bedroom unit size, as similarly situated families with natural born children.

34.     HUD's Housing Choice Voucher Guidebook, #7420.10G (hereafter "HUD Section 8 Guidebook") provides guidance to Public Housing Authority officials, such as

Defendants, regarding the proper administration of the Section 8 program, including requirements related to verification of family composition.

35.     The HUD Section 8 Guidebook provides that the following documents are "Acceptable Sources" for verification of "family composition": Income tax returns, school records, marriage certificates, birth certificates, divorces actions, Veterans Administration (VA) records, support payment records.

36.     In a written email statement dated October 25, 2002, regarding the RHA policy for adding minor family members to a Public Housing household administered by the RHA, Ms. Allison Hapgood, Special Assistant to Executive Director Steve Beam, stated: "RHA does not require anything from the courts to add a family member to the lease. If they have court papers we will accept them. If not we use birth certificates and notarized affidavits. In doing our research of other housing authorities we discovered an idea we will likely adopt. If it is a school-aged child we will seek information from the school that the applicant is indeed the guardian on record with the school."

37.     When a public housing authority determines a participating family's income and the use of such income to compute the housing assistance payment, and/or determines the family unit size under relevant subsidy standards, the family is entitled to notice and a hearing to challenge those determinations. 24 C.F.R. § 982.555.

38.     Pursuant to the Due Process Clause of the United States Constitution and Art. I, § 19 of the North Carolina Constitution, no person may be deprived of life, liberty or property without due process of law.

## VI. FACTS OF PLAINTIFF MARTHA GRAHAM

39.     Ms. Graham has had physical custody and care of her ten year old grandson, Eugene Ray Standford, Jr., since he was one year old, with the permission of Eugene's mother, Anita Evette Graham Standford.

40.     Ms. Graham was determined by Defendants and/or their agents to be eligible for a Section 8 Voucher and began participating in the Section 8 program in 2002.

41.     At the time of her initial meeting with RHA staff, Ms. Graham requested that Eugene be listed as a family member and part of her Section 8 household.

42.     Ms. Graham, as requested by Defendants, submitted a "Change of Status Form" on or about August 28, 2002, in order to "add" Eugene to her Section 8 household and rental assistance calculation.

43.     Defendants refused to allow Eugene to be included in Ms. Graham's Section 8 household.

44.     On or about October 2002, Ms. Graham provided Defendants' staff with copies of both the filed Petition for Adoption and the Consent to Adoption By Parent, Guardian Ad Litum, or Guardian, signed and notarized by Eugene's mother.

45.     On November 7, 2002, Defendants' staff denied Ms. Graham's request to add her grandson to her Section 8 voucher, writing "you have not provided legal custody paperwork on Eugene Standford."

46.     Defendants' denial was based upon Defendants' policy and practice of only including natural children and children who had been legally adopted or for whom

legal custody had been awarded, for purposes of determining rental assistance and family size for Section 8 program participants.

47.    At an August 2003 meeting with RHA staff, Ms. Graham again requested that Eugene be included as part of her Section 8 household and family.

48.    Defendants' staff again denied Ms. Graham's request because Ms. Graham did not yet have a legal custody or adoption order regarding her grandson.

49.    Ms. Graham properly notified Defendants' staff that Eugene would continue to reside in her home, even though Defendants had refused to include him in her Section 8 household and in Defendants' rental assistance calculation process regarding Ms. Graham.

50.    In December 2003, Ms. Graham was finally awarded legal custody of her grandson and she properly notified RHA staff of the court order. RHA then formally included Eugene within Ms. Graham's Section 8 household for purposes of determining Ms. Graham's income and voucher unit size.

51.    As a result of Defendants' policy and practice during the period of time prior to Ms. Graham obtaining a court custody order, she was forced to pay an increased share of the total rental assistance for her actual household size.

52.    At no time have Defendants or their agents notified or informed Ms. Graham that they considered Eugene to be an unauthorized occupant in Ms. Graham's household.

53.    At no time have Defendants or their agents notified or informed Ms. Graham that Defendants considered her request to include Eugene within her Section 8 household and rental assistance calculation as fraudulent or otherwise suspect in any way.

54.     At no time have Defendants or their agents informed Ms. Graham that she had a right to request an informal hearing challenging Defendants' decision not to add Eugene to Ms. Graham's household and include him in the calculation of rental assistance.

## VII. FACTS OF PLAINTIFF AMANDA FORD

55.     In July 2000, Ms. Amanda Ford was determined by Defendants and/or their agents to be eligible to participate in Defendants' Section 8 program.

56.     In mid-December 2000, Ms. Ford received physical custody of her minor cousin, Lisa Shade, from Ms. Ford's mother, who had legal custody of Lisa.

57.     In January 2001, Ms. Ford properly notified Defendants' agents of the addition of Lisa to her household and the resulting change in family composition.

58.     In February 2001, as instructed by her RHA caseworker, Ms. Ford submitted a Change of Status Form to the RHA staff person. Ms. Ford also gave the RHA staff person a signed and notarized custody transfer document from Ms. Ford's mother, designating Ms. Ford's as Lisa's custodial adult, as well as several documents from Wake County Human Services, establishing the legitimate and non-fraudulent nature of Lisa's on-going familial relationship within Ms. Ford's household.

59.     In response to Ms. Ford's Change of Status request, Defendants' staff added Lisa to Ms Ford's household and included her in the calculation of Ms. Ford's Section 8 rental assistance amount and voucher unit size.

60.     From approximately January 2001 through June 2002, Defendants provided Ms Ford with a Section 8 voucher based on an approved household that included Lisa.

61. In April 2002, Ms. Ford was notified by Defendants' agents that as of July 1, 2002, Defendants would refuse to recognize Ms. Ford's actual, physical custody of Lisa, and that as of that date, Lisa would be excluded from Ms. Ford's Section 8 household.

62. Defendants' action was based upon Defendants' policy and practice of only including natural children and children who had been legally adopted or for whom legal custody had been awarded, for purposes of determining rental assistance and family size for Section 8 program participants.

63. Ms. Ford, in order to include Lisa in her Section 8 household, was required by Defendants to obtain a court order giving her legal custody of Lisa, even though Lisa had continuously resided with Ms. Ford since on or about January 2001, with the full knowledge and approval of RHA staff.

64. As of July 1, 2002 and continuing through February, 2003, Defendants excluded Lisa from Ms. Ford's Section 8 household because Ms. Ford did not have a court custody order for Lisa.

65. Ms. Ford properly notified RHA staff that Lisa would continue to reside as a member of her household, even though RHA had refused to include the child in Ms. Ford's Section 8 household and rental assistance and voucher unit size calculation.

66. Defendants' exclusion of Lisa from Ms. Ford's Section 8 household and rental assistance calculation occurred even though the RHA had been notified by the local legal services office in June 2002 that an attempt was under way to hire private counsel to assist Ms. Ford in obtaining a legal custody order for Lisa.

67.     Defendants continued to refuse to revise their previous exclusion of Lisa even after they were notified that a formal court complaint to obtain legal custody had been filed August 22, 2002 by a private attorney on Ms. Ford's behalf.

68.     On Feb. 27, 2003, after Ms. Ford obtained a court order establishing legal custody of Lisa, RHA again approved adding her back onto Ms. Ford's Section 8 household.

69.     As a result of Defendants' policy and practice during the period of July 1, 2002 through December 31, 2002, plaintiff Ford was forced to pay an increased share of the total rental assistance for her actual household size.

70.     At no time did RHA notify or inform Ms. Ford that RHA considered Lisa to be an unauthorized occupant in Ms. Ford's Section 8 household.

71.     At no time did RHA notify or inform Ms. Ford that RHA considered her request to include Lisa within her Section 8 household as fraudulent or improper.

72.     At no time did Defendants or their agents inform Ms. Ford that she had a right to request an informal hearing challenging Defendants' decision to exclude Lisa from Ms. Ford's household and exclude Lisa from the calculation of rental assistance and family unit size.

## VIII. FACTS OF PLAINTIFF CHALONDA BUNDY

73.     In July 2003 Ms. Bundy, a participant in Defendants' Section 8 program, received physical custody of her then seven year old nephew, Shyheim Holloway, from her sister, Stacy Langston, the child's mother. Ms. Langston transferred physical custody of Shyheim to Ms. Bundy due to her loss of subsidized housing and subsequent homelessness. The whereabouts of Shyheim's father are unknown.

74.     Ms. Langston prepared a handwritten, signed, and notarized statement designating Ms. Bundy as the custodial adult with whom Shyheim would reside.   The statement specifically authorized Ms. Bundy to enroll Shyheim in public school.

75.     At all relevant times, Ms. Bundy's household has also contained her ten year old daughter, Icecis Evans. In July 2003, Ms. Bundy's voucher was designated at an assistance level for a two-bedroom rental unit.

76.     In August 2003, Ms. Bundy successfully enrolled Shyheim into public school in Wake County, North Carolina, with the use of the written statement furnished by Ms. Langston.  Ms. Bundy also was able to obtain assistance for Shyheim from the Food Stamp, Medicaid, and Work First programs administered by the Wake County Department of Human Services, using Ms. Langston's notarized statement to verify Shyheim's bona fide inclusion in her (Ms. Bundy's) household.

77.     In early September 2003 Ms. Bundy informed RHA staff that she had added Shyheim to her household.  At that time she explained the circumstances surrounding Shyheim's addition to her household and provided to RHA a copy of the notarized statement prepared by Ms. Langston.  In addition, she completed an RHA "Change of Status Form" reporting the addition of Shyheim to her household.

78.     Ms. Bundy then received a letter from RHA stating that in order for the annual reexamination process to be completed, Ms. Bundy needed to provide to RHA written verification of the amount of child support she received or that had been ordered, as well as a "[l]etter from Legal Aide concerning Nephew."

79.     On or about September 18, 2003, Ms. Bundy provided to RHA a letter from Senior Managing Attorney Victor J. Boone of Legal Aid of North Carolina, Raleigh

Office, setting forth the facts of the membership of Shyheim within Ms. Bundy's household.

80.     Ms. Bundy was then told by an RHA staff person that additional legal documentation would be needed regarding Shyheim's membership in Ms. Bundy's household.

81.     On or about September 22, 2003 Ms. Bundy provided to RHA a "General Power of Attorney and Authorization to Consent to Health Care for Minor" signed and notarized by Ms. Langston.

82.     Shyheim requires his own bedroom, separate from Ms. Bundy and her ten (10) year old daughter.  Currently, while needing three bedrooms, Ms. Bundy receives Section 8 assistance based on rental of a two-bedroom unit.

83.     To date RHA has refused to add Shyheim as a member of Ms. Bundy's Section 8 household.  RHA has further refused to increase the level of housing assistance to accommodate the household's need for a three-bedroom unit.

84.     Defendants' actions have been based upon their policy and practice of only including natural children and children who had been legally adopted or for whom legal custody had been awarded, for purposes of determining rental assistance and family size for Section 8 program participants.

85.     RHA's refusal to add Shyheim to Ms. Bundy's household or to increase her level of financial assistance to accommodate Shyheim's presence in her household, has imposed significant and unreasonable burdens upon her use of federal housing rental assistance.

86.     Ms. Bundy notified Defendants' agents that Shyheim would continue to reside in her home, even though Defendants had refused to include him in Ms. Bundy's Section 8 household and in Defendants' rental assistance calculation process.

87.     At no time have Defendants or their agents notified or informed Ms. Bundy that Defendants considered Shyheim to be an unauthorized occupant in Ms. Bundy's household.

88.     At no time have Defendants or their agents notified or informed Ms. Bundy that Defendants considered her request to include Shyheim within her Section 8 rental household as fraudulent or otherwise suspect in any way.

89.     At no time did Defendants or their agents inform Ms. Bundy that she had a right to request an informal hearing challenging Defendants' decision not to add Shyheim to Ms. Bundy's Section 8 household and include him in the calculation of her income and family size under RHA's subsidy standards.

## IX. FACTS OF PLAINTIFF GILDA BRISBON

90.     In June 2003, Ms. Brisbon, a participant in Defendants Section 8 program, had a voucher designated for a two-bedroom rental unit.

91.     In July 2003 Ms. Brisbon received physical custody of her then fourteen year old nephew, Cleveland Melendez, from her sister, Donna Melendez, the child's mother.  Ms. Melendez transferred physical custody of Cleveland to Ms. Brisbon, due to Ms. Melendez' incapacity resulting from chronic alcoholism. The whereabouts of Cleveland's father are unknown.

92.     Ms. Melendez signed and notarized a statement designating Ms. Brisbon as the custodial adult with whom Cleveland would reside.

93.     In August 2003, Ms. Brisbon successfully enrolled Cleveland into public school in Wake County, North Carolina, using the notarized statement from Ms. Melendez to verify Cleveland's membership in her family and household.

94.     Ms. Brisbon also was able to use Ms. Melendez' notarized statement to establish Cleveland's bona fide membership within her household and satisfy verification requirements from the Wake County Department of Human Services, for the purpose of receiving Food Stamp, Medicaid, and Work First assistance for Cleveland. Because of Cleveland's inclusion in Ms. Brisbon's household, the Work First cash assistance for her household was increased by Wake County Human Services in August 2003.

95.     In August 2003, Ms. Brisbon notified RHA concerning the addition of Cleveland to her Section 8 household, and properly filled out and submitted a "Change of Status" form to RHA.  Ms. Brisbon also submitted documentation from Wake County Dept. of Human Services showing the amount of increased Work First Family Assistance received by her household as a result of the approved inclusion of Cleveland in her household by Wake County.

96.     In September 2003, Ms. Brisbon was informed by Defendants' agents that RHA would not approve the addition of Cleveland to her Section 8 household without an order of "legal custody."

97.     Defendants' action was based upon Defendants' policy and practice of only including natural children and children who had been legally adopted or for whom legal custody had been awarded, for purposes of determining rental assistance and family size for Section 8 program participants

98. Ms. Brisbon notified Defendants' staff that Cleveland would continue to reside in her home, even though Defendants had refused to include him in her Section 8 household and in Defendants' rental assistance and unit size calculation.

99. In September 2003 Ms. Brisbon was also informed by RHA staff that as a result of her household's increased Work First Family Assistance, the amount of Section 8 rental subsidy paid to Ms. Brisbon would be decreased, requiring a corresponding increase in Ms. Brisbon's share of her total monthly rent payment to the private landlord.

100. At all relevant times, Ms. Brisbon's household has also contained her eleven year old daughter, Brittney. In addition, in November 2003 Ms. Brisbon gave birth to a son, who also resides with her.

101. Cleveland requires his own bedroom, separate from Ms. Brisbon and separate from Ms. Brisbon's 11 year old daughter.

102. Currently Ms. Brisbon receives Section 8 rental assistance designated at the level of only a two-bedroom, not three-bedroom, unit.

103. To date RHA, has refused to add Cleveland as a member of Ms. Brisbon's Section 8 household. RHA has further refused to increase the level of housing assistance to accommodate Cleveland's inclusion within Ms. Brisbon's Section 8 household.

104. At no time have Defendants or their agents notified or informed Ms. Brisbon that Defendants considered Cleveland to be an unauthorized occupant in Ms. Brisbon's Section 8 household.

105. At no time have Defendants or their agents notified or informed Ms. Brisbon that Defendants considered her request to include Cleveland within her Section 8 rental assistance calculation as fraudulent or otherwise suspect in any way.

106. At no time have Defendants or their agents informed Ms. Brisbon that she had a right to request an informal hearing challenging Defendants' decision not to add Cleveland to Ms. Brisbon's household and include him in the calculation of rental assistance and/or Ms. Brisbon's voucher unit size, based on family size.

## X. CLAIMS

### Count I--Violation Of Plaintiffs' Due Process Rights Under the First and 14th Amendments to the U.S. Constitution

107. Plaintiffs incorporate herein by reference paragraphs 1 through 106 of this complaint.

108. Defendants' policy and practice as described in paragraph 28 above, violates the Plaintiffs' due process rights under the United States Constitution, in that it amounts to a determination of each Plaintiff's family income and/or family size, without notice and opportunity for hearing.

109. As a direct and proximate result of Defendants' actions, Plaintiffs and their respective families have suffered, and in the matter of Plaintiffs Bundy and Brisbane, continue to suffer, injuries.

### Count II—Violation of Plaintiffs' Due Process Rights Under the Law of the Land Clause to the North Carolina Constitution

110. Plaintiffs incorporate herein by reference paragraphs 1 through 106 of this complaint.

111. Defendants' pattern, practice and policy as described in paragraph 28 above violates the Plaintiffs' due process rights under the North Carolina Constitution in that it amounts to a determination of family income and/or family size, without notice and opportunity for hearing.

112.     As a direct and proximate result of Defendants' actions, Plaintiffs and their respective families have suffered, and in the matter of Plaintiffs Bundy and Brisbane, continue to suffer, injuries.

**Count III--Violation Of Governing Statute and Regulations**

113.     Plaintiffs incorporate herein by reference paragraphs 1 through 106 of this complaint.

114.     Defendants' pattern, practice and policy as described in paragraph 28 above is arbitrary, capricious and unreasonable, violates the Defendants' governing HUD regulations at 24 C.F.R. § 982.551(h)(2), 24 CFR 5.403; 24 CFR 982.201(c )(1) and (2), 24 C.F.R. 982.555, and is contrary to existing HUD guidelines.

115.     Defendants, acting under color of law, violated Plaintiffs' statutory rights under the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq., and its implementing regulations at 24 C.F.R. Part 982, in violation of 42 U.S.C. § 1983.

116.     As a direct and proximate result of Defendants' actions, Plaintiffs and their respective families have suffered, and in the matter of Plaintiffs Bundy and Brisbane, continue to suffer, injuries.

## XI. RELIEF

Wherefore, the Plaintiffs pray that this honorable Court enter relief as follows:

a) Assume jurisdiction over this matter.

b) Declare that Defendants' refusal to provide Plaintiffs with notice and an informal administrative hearing regarding its decision affecting Plaintiffs' income, rental assistance calculation and family unit size violates the Plaintiffs' procedural Due Process rights and rights under the United States Housing Act and its implementing regulations.

c) Declare that the Defendants' policy and practice of excluding minor, blood relatives of adult Section 8 tenants who are not their natural born children, from Section 8 families and not counting them as part of the Section 8 household and rental assistance calculation, unless and until a court adoption or custody order has been obtained by an adult Section 8 participant, is arbitrary, capricious and unreasonable, and violates the Plaintiffs' rights under 42 U.S.C. § 1437f, as well as Defendants' governing HUD regulations at 24 C.F.R. §982.551(h)(2), 24 CFR 5.403; 24 CFR 982.201(c )(1) and (2).

d) Grant injunctive relief directing Defendants to refrain from requiring a custody or adoption order before allowing a child related by blood to a member of a Section 8 household or applicant to be added to or included in the Section 8 household.

e) Grant injunctive relief directing the Defendants to refrain from reducing Section 8 tenants' rental assistance or voucher unit size unless and until they have been given advance written notice and an opportunity for an informal administrative hearing.

f) Award damages to Plaintiffs Ford, Graham, Bundy and Brisbone.

g) Award reasonable attorneys fees and costs to Jack Holtzman and the North Carolina Justice and Community Development Center, for the prosecution of this action.

h) Grant such additional or alternative relief as may be deemed just and proper.

Respectfully submitted this 7th day of April, 2004.

NORTH CAROLINA JUSTICE AND COMMUNITY DEVELOPMENT CENTER
Post Office Box 28068
Raleigh, NC 27611
(919) 856-2144
(919) 856-2175 (fax)

BY: _____
Jack Holtzman
NC Bar #13548

LEGAL AID OF NORTH CAROLINA-Raleigh Office
Post Office Box 1731
Raleigh, N.C. 27602
(919) 828-4647
(919) 839-8370 (fax)

BY: _____
Roger M. Cook
NC Bar # 13216

Co-Counsel for Plaintiffs